Russell Glen **TORES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49125.

Court of Criminal Appeals of Texas.

Feb. 5, 1975.

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. Punishment was assessed at life. This is a companion to the case of Wood v. State, 515 S.W.2d 300 (Tex.Cr.App. 1974).

Most of appellant's complaints are based on his contention that he was illegally arrested, and therefore evidence found and his fingerprints and his confession taken after his arrest could not be used against him.

Officer John Palich testified that at approximately 3:00 a. m. he saw an automobile that did not stop at a stop sign at an intersection in Dallas County. He stopped the automobile and appellant was the driver. He related that he arrested appellant for running a stop sign. A charge was filed against appellant for failing to stop at the stop sign. After appellant produced his driver's license, Palich noticed that the passenger, Mark Allen Wood, appeared to be intoxicated or under the influence of drugs. Palich asked Wood for his driver's license for identification purposes because he appeared to be drunk and was in a public street. Appellant quickly volunteered that Wood had lost it the day before. Wood had no identification, and Palich ordered him to get out of the car. Wood had on a brown army dress blouse. Palich, for his protection, "patted" Wood down for weapons before placing him in the police car. He felt something that felt hard like the handle of a hunting or large pocket knife, " . . . and I ran my hand into the pocket to see if this was, in fact, a knife, and I pulled out a wad of money." He found a total of $108; " . . . there were seven 5's, thirty 1's, four 10's, two rolls of pennies and one roll of nickles." He then placed Wood under arrest for burglary. He had a report that there was an attempt to commit burglary of a service station shortly before midnight, eight-tenths of a mile away by three people, one of whom had been arrested, and two young white males who were wearing jeans and fatigue jackets had run.

Palich testified that he placed Tores, appellant, under arrest for "investigation" of burglary in addition to the arrest for run-

ning a stop sign. He ordered appellant out of the car, told both of them not to run, and called for assistance. He then found a .45 caliber automatic pistol under the driver's seat. A .22 caliber pistol was found to the right of the front seat on the passenger side where Wood had been sitting.

The homicide of George J. Youngblood charged in the indictment took place at a Texaco service station in Mesquite. He died as a result of gunshot wounds to the head. The proof showed that they were fired by the .45 caliber pistol found under the driver's seat of appellant's car. Fingerprints of appellant were taken at the scene of the homicide.

A roll of coins found in the pocket of Wood was identified by the domino scores on the wrapper made at the service station.

Appellant's confession was introduced at a hearing outside the presence of the jury, and after the court found that he was properly warned and that it was voluntarily given. It recited that he and Mark Wood drove by the Texaco station several times, stopped, went inside and asked to look at some tires. He pulled the gun out, told the attendant it was a .45 automatic and for him to get the money out of the cash register, and the gun fired. After he fell, "I shot him again."

A part of the confession omitted by the State but introduced by appellant was: "The attendant moved very fast and I was scared and I ran into the rack." This immediately preceded that part of the statements concerning the first shot.

### Fingerprints

First the contention that the arrest of appellant was illegal and therefore his fingerprints should not have been taken.

■ Except for the offense of speeding, an officer may arrest and take into custody one seen committing a traffic offense.

The Uniform Act Regulating Traffic on Highways, Article 6701d, Section 153, Vernon's Ann.Civ.St., provides:

" 'Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act.'

"Section 148(a) of the same Article provides:

" 'Whenever a person is arrested for any violation of this Act punishable as a misdemeanor, and such person is not immediately taken before a magistrate as hereinbefore required, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, the offense charged, and the time and place when and where such person shall appear in court. *Provided, however, that the offense of speeding shall be the only offense making mandatory the issuance of a written notice to appear in court, and only then if the arrested person gives his written promise to appear in court, by signing in duplicate the written notice prepared by the arresting officer;* and provided further, that it shall not be mandatory for an officer to give a written notice to appear in court to any person arrested for the offense of speeding when such person is operating a vehicle licensed in a state or country other than the State of Texas or who is a resident of a state or country other than the State of Texas.' (Emphasis supplied)

"Article 14.05, Vernon's Ann.C.C.P., provides:

" 'In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant.'

"Article 14.06, Vernon's Ann.C.C.P., provides:

" 'In each case enumerated in this Code, the person making the arrest shall take the person arrested or have him taken without unnecessary delay before the magistrate who may have ordered

the arrest or before some magistrate of the county where the arrest was made without an order. . . . ' "

■ Since the proof shows that the appellant was violating Article 6701d, supra, the officer had a right to arrest and take appellant into custody as authorized by Section 153 of the Act.

The evidence shows that officer Palich initially arrested appellant for running the stop sign. Under the provision of the statutes above cited, the arrest and the taking of appellant before a magistrate was authorized. When the appellant was in custody, the taking of his fingerprints was authorized.

The Supreme Court case of Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), relied upon by appellant, is not in point. In that case there was a round-up of all young black males in town for the sole purpose of obtaining their fingerprints. Such are not the facts of the present case.

## Search of Automobile

The complaint is that the search of the automobile was illegal. This Court held in the companion case of Wood, supra, concerning the same fact situation, that the search of his person and the automobile was legal, and the court did not err in admitting the items found into evidence. Appellant, Tores, was the driver of the automobile. The officer had the right to arrest for the traffic violation. It is not necessary to decide if the initial arrest authorized the search. The officer testified that Wood appeared to be intoxicated in a public street. This gave him a right to arrest Wood.

■ After the officer, who had heard about an attempted burglary nearby, found the rolls of coins and currency, he had a right to continue the search. He related that he arrested Tores and Wood for "investigation" of burglary. Under the circumstances, the officer would have been remiss in his duty had he not investigated further. The Fourth Amendment of the Constitution of the United States only prohibits unreasonable searches and seizures.

Appellant had his hands on his car. Wood was at the police car. The officer used good judgment in taking the guns from appellant's car for his own protection. See Grego v. State, Tex.Cr.App., 456 S.W.2d 123. See also Smoot v. State, Tex.Cr.App., 475 S.W.2d 281.

■ An "officer should be permitted to take reasonable precaution to safeguard his life in the process of making the arrest." State v. Riley, 240 Or. 521, 402 P.2d 741 (1965). This is particularly true if from the totality of the circumstances presented he has reasonable grounds to believe he is in danger of bodily harm or injury or that the person he encounters is armed or dangerous. Wimberly v. State, 434 S.W.2d 857 (Tex.Cr.App.1968).

We hold, as we did in the Wood case, that this search was not unreasonable and the court did not err in admitting the guns into evidence.

Appellant also contends that appellant was illegally detained and therefore his confession was inadmissible. For the reasons given in the other grounds of error, we hold that the detention was legal. The contention is overruled.

We perceive no error because the court admitted evidence of a jail break in which appellant participated, and flight.

No error has been shown. The judgment is affirmed.

ODOM and ROBERTS, JJ., concur in the results.