**Norma Ruth JOHNSON, Respondent,**

v.

**Billy Wayne JOHNSON, Appellant.**

**No. WD 34443.**

Missouri Court of Appeals, Western District.

May 29, 1984.

George E. Kapke, Independence, for appellant; Cochran, Kramer, Kapke & Willerth, Independence, of counsel.

John W. Dennis, Jr. and James T. Cook, Independence, for respondent; Paden, Welch, Martin, Albano & Graeff, Independence, of counsel.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

In this dissolution of marriage proceedings, two issues are presented: (1) Whether the trial court erred in allowing respondent

maintenance; and (2) whether the trial court erred in awarding respondent one-third of the present value of the husband's pension plan with Armco, Inc.

The parties were married on July 10, 1958, and separated on November 3, 1981. No children were born of the marriage, but each of them had two children born during their previous marriages. Respondent was 51 years of age at the time of trial. She had only an 8th grade education, and no special training or skills for employment. She had worked at Neevel Manufacturing Company, a luggage manufacturer, as a bender from about 1965 to 1972, at which time she had to quit because of injuries incurred in an automobile accident, for which she received a $10,000 settlement which was deposited in the parties' credit union account and which was set off to respondent on the division of the property. The last place respondent worked was a nursing home for about two months prior to January, 1982, but she had not worked since because of an arthritic condition of her shoulder, arm and hand which affects her ability to lift. In addition to the arthritic condition, respondent described her other physical ailments as being stomach problems which resulted from beatings. (The record is replete with evidence of appellant's physical abuse administered to respondent during the marriage.) She has had two hernia operations. She still has low right side back pain from the 1972 automobile accident. She was hospitalized at M.C.I. for two weeks and at St. Luke's Hospital for two weeks, and she was under a doctor's care at the time of trial, August 24, 1982, at which time she testified that she was physically unable to work. She had filed two applications for social security benefits which were denied, apparently upon the basis of a finding that she was able to work.

Plaintiff's Exhibit 9, respondent's statement of marital and non-marital property and income and expenses, was admitted into evidence without objection. It shows her gross income on the last year's tax return to have been $321.67, and her expenses to have been $742.00 per month, testified by her to have been accurate at the time of trial. She did estimate some expenses such as future rent, $150 per month, which seems to be very reasonable. The $742.00 per month figure did not include future costs of hospitalization and medical insurance costs.

Appellant was 51 years of age at the time of trial, employed at Armco, Inc., and had been since 1954. The trial court found that his earnings were about $1,750 per month, and awarded respondent $300 per month maintenance. Appellant contends that there was no substantial evidence of her needs, and that the evidence shows that she was capable of reasonable employment, and with that employment and the portion of marital property distributed to her, she would be able adequately to meet her anticipated needs.

■ The trial court found that respondent "is not presently employed and is only capable to part-time minimal employment." Certainly respondent's testimony, which could be considered by the court as true, is substantial that she was not able to be employed sufficiently to provide for her needs. She was 51 years of age, had no extensive education or any special skills, and certainly, as the trial court could believe [*In re Marriage of Jackson*, 592 S.W.2d 875, 877 (Mo.App.1980)], she had physical problems which would detract from her ability to be full-time employed. The fact that she was turned down for social security disability benefits is not conclusive on the issue. Appellant himself testified that respondent had several problems, so much that it was hard to keep up with. He attributed her arthritis to the 1972 accident, since that time she had not really been the same. He admitted that his deposition testimony that "I knew she needed money to get by on. She wasn't able to work or hold a job" was true when given.

■ Appellant argues that the trial court made no finding regarding respondent's reasonable needs but the record shows that neither party made a request for specific

findings, and thus the facts are to be assumed to have been found in accordance with the result reached. *In re Marriage of Brewer,* 592 S.W.2d 529, 533 (Mo.App. 1979); *Stamme v. Stamme,* 589 S.W.2d 50, 53 (Mo.App.1979). The recitation of the decree as to employability, above, reaches that result. Compare *Moseley v. Moseley,* 642 S.W.2d 953, 958 (Mo.App.1982), a case where the wife had no special skills, a poor job history, and had severe physical and emotional problems.

■ Although it is true that respondent may have extra investment income from liquid marital property set off to her, possibly around $300.00 per month, that does not require an interference with the maintenance award. It should be noted that the trial court did not allow respondent an award for any attorney fees. She had paid prior to trial $250 in attorney's fees, there were $1,795 incurred by her to the time of trial, and, undoubtedly, additional fees would be incurred by her in defending this appeal. A spouse is not required to dispose of her assets or consume marital property before she would be entitled to maintenance. *In re Marriage of Brewer,* 592 S.W.2d 529, 535[13] (Mo.App. 1979). No abuse of the trial court's broad discretion is apparent in the award of $300 per month to respondent for her maintenance. *Sawtell v. Sawtell,* 569 S.W.2d 286 (Mo.App.1978). No issue is presented as to appellant's ability to pay the maintenance, but if circumstances change, a modification might be appropriate as stated in the *Brewer* case, supra. Point I, as to the propriety of awarding maintenance, is overruled.

■ As to the Armco pension plan, Robert Boland testified that it would yield appellant $509.50 per month on June 30, 1984, when he would have completed 30 years of employment. At the end of his life expectancy, at 72 years, $110,052 total would have been paid on it, which, if the annual payments were invested at 9%, would compute to $49,111.84 as a present value. The trial court awarded one-third of that amount, or $16,370, to respondent, and ordered appellant to pay it at $300 per month

with 9% per annum interest. The pension plan is non-contributory by the employee, and appellant seeks thus to distinguish this case from *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo. banc 1982), where the employee contributed to the plan. Any distinction between employee contributory and non-contributory retirement plans is without a difference where the plan has vested in an employee. Vesting is the key feature to a finding that a pension plan constitutes marital property. Here, the plan was clearly vested in appellant and it would have been matured after June 30, 1984, when he would be eligible to receive retirement benefits. Under the *Kuchta* case the trial court clearly had authority to treat the retirement plan as marital property.

■ Appellant argues, however, that the trial court's decree granting respondent one-third of the present value of the plan created a "risk of forfeiture" to the husband in that the pension benefits would cease upon his death, while under the decree the award to respondent would have to be paid, presumably from any assets in his estate. This matter is touched upon at pages 665–666 of the *Kuchta* decision, "The uncertainties thereof may dictate the style of the award to the non-working spouse, whose needs may be better served by receipt of less contingent assets", and " * * * it is imperative that trial courts be authorized to apply a flexible approach to accommodate the particular facts of each case." What the trial court has here done is to tailor the award to the needs of respondent, for it is obvious that if appellant should die in the future, then her maintenance award would then cease, and the set-off to her of a fixed amount of marital property would tend to alleviate that possible situation. What the decree has accomplished here is to permit a buy-out of respondent's interest in the vested pension plan, which is what was done in the *Kuchta* case, although, by a cash award to the wife there, leaving the husband's plan free of any claims. Here, there is a benefit also to the husband, for if he pays the principal and interest timely on the award, it will be

finally discharged in about 4½ years. It does not appear whether appellant plans to or will retire on June 30, 1984, but if he does not, it is provided in the plan that his pension will be augmented for each year of employment beyond 30 years. The award of the percentage of the pension plan's present value is clearly suggested as a viable alternative to that of establishing a certain portion of the retirement benefits to be paid to the nonworking spouse when the working spouse retires and begins to receive them in the *Kuchta* opinion.

Appellant also contends that the trial court erred in not determining the value of the portion of the pension plan earned by him for about 4 years prior to the parties' marriage in 1958, and setting that portion off to him as non-marital property. The four years of prior employment is but one-seventh of the 28 years of total service, and is thus relatively negligible. The contention would have more merit if the trial court had set off 50% or more of the pension value to respondent, but it gave only one-third of that present value to her. In view of the extensive evidence of appellant's misconduct (which need not be here set forth in detail), the trial court did not err in dividing marital property under the standards of § 452.330, RSMo (amended, L.1981, p. 615, § 1). Point II, raising the issue of division of the pension plan as marital property, and the manner of accomplishing that division, is overruled.

The judgment is affirmed.

All concur.