Opinion issued October 27, 2005




                                                                                                                                              




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00723-CR




HUGO RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 945479




 MEMORANDUM OPINION

          Appellant, Hugo Rodriguez, appeals from a judgment following a pre-trial
ruling denying his motion to suppress, after which he entered his plea of guilty,
pursuant to a plea-bargain agreement, to the charge of possession of cocaine weighing
at least 400 grams. See Tex. Health & Safety Code Ann. § 481.112 (Vernon
2003). The trial court assessed appellant’s punishment at 10 years in prison and a
$5,000 fine. We address (1) whether appellant had standing to complain of the
unlawful search and seizure of a vehicle that he was driving and (2) whether the trial
court erred in overruling appellant’s motion to suppress based upon the traffic stop and
subsequent impoundment and inventory of the vehicle. We affirm.
Factual Background

          While conducting surveillance at 4215 Oneida on April 11, 2003, Pasadena
Police Department Officer Will Kelly observed Tomas Ruiz place a blue container in
the trunk of an Acura. Appellant arrived at the residence and drove away in the Acura. 
Sergeant Greg Dalton, a narcotics officer who was also part of the surveillance,
followed appellant and witnessed him “exceeding the speed limit.” Sergeant Dalton
radioed Officer Cesar Brosas to “contact the driver, identify the driver, [and] make him
aware of the violations.” After having witnessed appellant hit the curb on the right
side of the outside lane at least twice, cross the left line into the on-coming lane of
traffic, and swerve back into his lane, Officer Brosas pulled appellant over for failure
to maintain a single lane.
          Appellant, who was the vehicle’s sole occupant, came to a stop in a private
business parking lot, taking up several parking spaces. Officer Brosas arrested
appellant for having no driver’s license or insurance. Officer Brosas did not ask
appellant whether someone else could take care of the vehicle, nor did he consider
leaving the vehicle in the parking lot. Appellant never requested that Officer Brosas
let him call someone to get the car. Officer Earl Morrison, who was a Deer Park
police officer assigned to the Pasadena Narcotics Task Force, arrived at the scene,
drove the vehicle to the impound lot, and inventoried it. 
          Officer Isaac Villareal interviewed appellant after his arrest. Appellant told him
that on this occasion, as on 14 prior occasions, he had gone to 4215 Oneida to pick up
a car containing cocaine and to deliver the vehicle according to instructions that he
had received by cell phone. Appellant did not identify the owner of the car or the
person with whom he had this arrangement. 
          Appellant filed motions to suppress his statement to Officer Villareal and the
physical evidence collected after the stop. He alleged in his motion to suppress that
the traffic stop and the subsequent impoundment and inventory of the vehicle did not
meet the requirements of a valid inventory exception to the warrant requirement. 
Appellant did not testify at the pre-trial motion-to-suppress hearing. The trial court
granted appellant’s motion to suppress his statement to Officer Villareal and denied
appellant’s motion to suppress evidence from the search and seizure of the vehicle. 
The trial court did not enter findings of fact or conclusions of law.        
Standing
          Appellant’s sole point of error challenges the denial of his motion to suppress
the evidence from the search and seizure of the Acura. Appellant claims that the
traffic stop and subsequent impoundment and inventory search of the Acura were
illegal because Officer Brosas lacked either reasonable suspicion or probable cause
to stop the vehicle and because the subsequent search did not meet the requirements
of a valid inventory exception to the warrant requirement under the Fourth
Amendment of the United States Constitution and Article I, Section 9 of the Texas
Constitution. See U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim.
Proc. Ann. art. 38.23 (Vernon 2005); Garza v. State, 137 S.W.3d 878, 882 (Tex.
App—Houston [1st Dist.] 2004, pet. ref’d). On appeal, the State challenges
appellant’s standing to raise a suppression issue regarding a vehicle in which he had
no reasonable expectation of privacy.
A.      Timeliness
          Failure to prove standing may be raised at any time, including for the first time
on appeal. State v. Klima, 934 S.W.2d 109, 110-11 (Tex. Crim. App. 1996). The
rationale underlying this principle is that the State is not raising a new issue, but is
merely challenging whether a defendant has met his obligation of alleging and proving
standing, which is an element of a Fourth Amendment claim. Id. at 111. 
B.      Judicial Estoppel
          In his reply brief, appellant argues that the State is estopped from arguing that
he lacks standing because the State filed a “Notice of Seizure and Intended Forfeiture”
in a proceeding subsequent to the trial, referring to appellant as the owner and
possessor of the vehicle. 
          Appellant relies on Matthews v. State for the proposition that “[j]udicial
estoppel holds that a party who has made a sworn statement in a pleading, a
deposition, oral testimony or affidavits in a judicial proceeding is judicially estopped
from maintaining a contrary position in a subsequent proceeding.” Matthews v. State,
165 S.W.3d 104, 110 (Tex. App.—Fort Worth 2005, no pet. h.) (holding that State is
estopped from arguing standing when State argued in trial court that appellant owned
vehicle and consented to search). Appellant contends that the State is not permitted
to assert conflicting theories on this issue. However, there is no indication in the
record before us that the sworn statements on which appellant bases his claim of
judicial estoppel were made in connection with the trial of this case or that they were
made during a prior judicial proceeding, as required by the authority on which he
relies. See Crowder v. Tri-C Resources Inc., 821 S.W.2d 393, 397 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). Thus, we hold that appellant has failed to
establish the requisite elements of judicial estoppel.
C.      The Law and Analysis
          Standing is a question of law, which we review de novo. State v. Johnson, 896
S.W.2d 277, 285 (Tex. App.—Houston [1st Dist.] 1995), aff’d, 939 S.W.2d 586 (Tex.
Crim. App. 1996). The burden to prove standing rests with the defendant during the
motion-to-suppress hearing. Wilson v. State, 692 S.W.2d 661, 671 (Tex. Crim. App.
1984). The appellate court may affirm the trial court’s ruling denying the motion to
suppress on the ground that the appellant failed to establish standing as a matter of
law, even though the issue was not considered during the hearing on the motion. Id.
          To have standing, or a reasonable expectation of privacy, a defendant must
show two things: (1) that he had an actual, subjective expectation of privacy, exhibited
by measures taken to protect the privacy of the property in question, and (2) that the
subjective expectation of privacy is one that society is prepared to recognize as
reasonable. Jackson v. State, 745 S.W.2d 4, 7-8 (Tex. Crim. App. 1988); see Flores
v. State, 871 S.W.2d 714, 720 (Tex. Crim. App. 1993) (holding that appellant did not
have standing to contest search because no evidence was offered during hearing that
he had any privacy interest or right to use his mother’s car); Green v. State, 682
S.W.2d 271, 294 (Tex. Crim. App. 1984) (determining that appellant did not have
standing to contest search of his brother’s car); Esco v. State, 668 S.W.2d 358, 361 
 
(Tex. Crim. App. 1982) (concluding that defendant lacked standing to contest search
of vehicle owned by co-defendant).
           Appellant relies on dictum in State v. Allen in which this Court observed, “A
non-owner driving alone stands in the shoes of the owner. No one else is present to
prevent access to any part of the car, or to object to an improper search by the police.”
State v. Allen, 53 S.W.3d 731, 733 (Tex. App.—Houston [1st Dist.] 2001, no pet.). 
However, the question presented in Allen was not whether a sole occupant has
standing to object to an improper search, but, rather, whether a non-owner driver has
standing when the owner is also present. See id. (holding that non-owner drivers have
no legitimate expectation of privacy with respect to automobile’s trunk when owner
is also present). 
          Here, although appellant had the keys to the Acura and was the sole occupant
at the time of the stop, no evidence was admitted that he had permission to possess the
vehicle or that he had an actual, reasonable, subjective expectation of privacy in the
searched premises. The only evidence introduced regarding the vehicle was that, on
14 prior occasions, appellant had gone to 4215 Oneida to pick up a vehicle and had
delivered it according to instructions that he had received by cell phone and that this
was the car that he had been driving when he was arrested. Appellant did not
introduce evidence that the registered owner of the vehicle gave him consent to be in
the car or that the person with whom he had had this arrangement was authorized by
the owner to give appellant permission to use the vehicle. In the absence of any
evidence showing that appellant had a legitimate expectation of privacy in the vehicle,
appellant lacks standing to complain of the search. See Flores, 871 S.W.2d at 720;
Sutton v. State, 711 S.W.2d 136, 138 (Tex. App.—Houston [14th Dist.] 1986, no pet.). 
          Accordingly, we hold that appellant did not have a reasonable expectation of
privacy in the vehicle and its contents so as to have standing to complain of the
unlawfulness of any search or seizure of the property in question.
Merits of the Motion to Suppress
          Even if appellant had had standing to raise his challenges, the record would
sufficiently have supported the trial court’s overruling of appellant’s motion to
suppress. In his sole point of error, appellant contends that the trial court erred
because (1) the police did not have reasonable suspicion or probable cause to stop 
him;


 (2) the search was not pursuant to a valid inventory; (3) the search was not a
valid search incident to arrest; and (4) there was no probable cause to search the trunk.
 
 
A.      Standard of Review
          In reviewing the trial court’s decision to deny a motion to suppress, the
reviewing court applies a bifurcated standard of review, affording almost total
deference to the trial court’s determination of facts supported by the record, while
conducting a de novo review of the trial court’s application of the law to those facts. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). If the trial court
does not make explicit findings of fact, the appellate court reviews the evidence in the
light most favorable to the trial court’s ruling. Id. at 327-28. The appellate court
assumes that the trial court made implied findings of fact supported in the record that
buttress its conclusion. Id. at 328.
B.      Reasonableness of Traffic Stop
          In his sole point of error, appellant first argues that the stop was illegal because
the evidence failed to establish reasonable suspicion or probable cause to believe that
appellant committed a traffic offense.
          Section 545.060(a) of the Texas Transportation Code provides, “An operator
on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive
as nearly as practical entirely within a single lane; and (2) may not move from the lane
unless that movement can be made safely.” Tex. Transp. Code Ann. § 545.060(a)
(Vernon 1999). A routine traffic stop is a detention and must be reasonable under both
the United States and Texas Constitutions. See Davis v. State, 947 S.W.2d 240, 242-45 (Tex. Crim. App. 1997); Garza, 137 S.W.3d at 882-83. To be reasonable, an
investigative traffic stop must be temporary and last no longer than is necessary to
effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct.
1319, 1325, (1983); Davis v. State, 947 S.W.2d 240, 243-45 (Tex. Crim. App. 1997).
During an investigative traffic stop, it is reasonable for an officer to check for
outstanding warrants and to demand identification, a valid driver’s license, and proof
of insurance from the driver. See Davis, 947 S.W.2d at 245 n.6. To make a
reasonable-suspicion determination, the court must look at the “totality of the
circumstances” of the case to see whether the detaining offer had a “particularized and
objective basis” for suspecting legal wrongdoing. U.S. v. Arvizu, 534 U.S. 266, 273,
122 S. Ct. 744, 750 (2002). 
          Additionally, a police officer’s decision to stop a vehicle is reasonable if the
officer has probable cause to believe that the driver has committed a traffic violation. 
Whren v. U.S., 517 U.S. 806, 810, 116 S. Ct. 1769, 1772-73 (1996); Walter v. State,
28 S.W.3d 538, 542 (Tex. Crim. App. 2000). When several officers are cooperating,
their cumulative information should be considered in determining whether probable
cause exists. Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982).  
          
          Appellant contends that his swerving into other lanes was not proven to be
unsafe, as required by section 545.060(a) of the Texas Transportation Code, and that
Officer Brosas’s decision to stop him was unreasonable because he did not have
reasonable suspicion or probable cause to believe that appellant had committed a
traffic violation. However, Officer Brosas saw appellant swerve out of his lane, cross
over the line into the on-coming traffic lane, and strike a curb at least twice, all in what
he described as an unsafe manner. Officer Brosas testified that there were one or two
other cars driving in the immediate area on the street where appellant was driving. 
Officer Dalton also witnessed appellant driving in excess of the speed limit and
communicated this by radio to Officer Brosas. Because of the collective knowledge
of the cooperating officers, Officer Brosas had not only reasonable suspicion, but also
probable cause to stop appellant. See Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003); Astran v. State, 799 S.W.2d 761, 764 (Tex. Crim. App.1990); see
also Martinez v. State, 29 S.W.3d 609, 611-12 (Tex. App.—Houston [1st Dist.] 2001,
pet. ref’d) (holding that defendant’s failure to maintain single lane by swerving onto
shoulder allowed trooper to pull over driver of vehicle). We hold that the record
sufficiently supports the trial court’s implied conclusions that the traffic stop was
reasonable. 
 
C.      Search Pursuant to Valid Inventory
           Appellant also argues that the search and seizure of evidence from his vehicle
was unlawful because (1) the seizure of the vehicle was not a proper impoundment,
given that reasonable alternatives to impoundment were available; (2) the police
officers did not follow departmental inventory procedures; (3) the inventory search
was a pretext for an investigative search; and (4) the combination of pretext and failure
to follow procedures rendered the search invalid.
          Reasonable cause for impoundment of an automobile may exist when the driver
is removed from his automobile and placed under custodial arrest and his property
cannot be protected by any means other than impoundment. Lagaite v. State, 995
S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.]1999, pet. ref’d); Garza, 137 S.W.3d
at 882-83. The State bears the burden of proving that an impoundment is lawful and
may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives
other than impoundment were available to ensure the automobile’s protection, (3) the
impounding agency had an inventory policy, and (4) the policy was followed. Garza,
137 S.W.3d at 882. Inventories serve to protect (1) the owner’s property while it is
in custody, (2) the police against claims or disputes over lost or stolen property, and
(3) the police from potential danger. South Dakota v. Opperman, 428 U.S. 364,
375-76, 96 S. Ct. 3092, 3097 (1976); Garza, 137 S.W.3d at 882.          
          1.       Proper Impoundment
          Appellant argues that the seizure of the vehicle was not a proper impoundment
because the police officers had reasonable alternatives besides impoundment to ensure
protection of the vehicle. He asserts, “Pasadena’s policy of impounding a vehicle each
time the police arrest the driver, despite reasonable alternatives, in combination with
the fact that, in this case, the vehicle could have been safely left in the parking lot,
establish that the impoundment was unlawful, rendering the subsequent inventory
unlawful.”
          Appellant complains that, because the vehicle was in a parking lot and was not
impeding traffic, Officer Brosas should have asked appellant whether someone else
could have removed the vehicle. When impoundment follows custodial arrest, courts
consider the following factors to determine the reasonableness of impoundment: (1)
whether someone was available at the scene of the arrest to whom the police could
have given possession of the vehicle; (2) whether the vehicle was impeding the flow
of traffic or was a danger to public safety; (3) whether the vehicle was locked; (4)
whether the detention of the arrestee would likely be of such duration as to require
police to take protective measures; (5) whether there was some reasonable connection
between the arrest and the vehicle; and (6) whether the vehicle was used in the
commission of another crime. Josey v. State, 981 S.W.2d 831, 842 (Tex.
App.—Houston [14th Dist.] 1998, pet. ref’d). 
          Although there is no evidence that appellant’s car was impeding traffic or that
it could not be locked, other factors demonstrate that the impoundment of appellant’s
vehicle was reasonable under the circumstances. First, there was no one available at
the scene to whom the officers could have released the car. Officer Brosas testified
that he arrested appellant after having learned that he did not have a driver’s license
or proof of insurance. Appellant was alone in the car; there was no one else at the
scene to whom the car could have been given; and appellant failed to identify anyone
with the right to possess the vehicle. Second, at the time that Officer Brosas initiated
impoundment procedures, appellant was under arrest and being transported to the city
jail. Thus, the detention of appellant would likely be of such duration as to require
police to take protective measures. Third, there was some reasonable connection
between appellant’s arrest and the vehicle. Officer Brosas testified that he saw
appellant driving the car immediately before he arrested appellant. Officer Brosas
initiated the stop because appellant had committed a traffic violation. This
demonstrates that a reasonable connection between the arrest and the car existed. See
Garza, 137 S.W.3d at 882-83; Josey, 981 S.W.2d at 842.
          Officer Brosas testified that the vehicle was parked across several parking
spaces in a private business parking lot and that appellant was alone and under arrest. 
See Garza, 137 S.W.3d at 882-83. Peace officers need not independently investigate
possible alternatives to impoundment absent some objectively demonstrable evidence
that alternatives did, in fact, exist. See id. Thus, it was not incumbent upon the
officers to locate the manager of the private business to determine whether the vehicle
that appellant was driving could remain in the private parking lot. We hold that the
record sufficiently supports the trial court’s implied conclusion that no alternatives
other than impoundment were available to ensure the automobile’s protection. 
          2.       Departmental Inventory Procedures
          Appellant next argues that the State failed to prove that there were standardized
inventory procedures and that the police officers followed those procedures. 
          Officer Morrison and Sergeant Goodman both testified that the Pasadena Police
Department required inventories of all impounded vehicles as a matter of policy and
practice. Officer Morrison testified that his department’s policy required an inventory
of every vehicle impounded and that he had no discretion on that matter. Sergeant
Goodman, an instructor at the Pasadena Police Academy, also testified that, when a
vehicle is impounded, the officer must inventory the entire vehicle in order to comply
with the police department’s rules.


 Pursuant to the Pasadena Police Department’s
policy, Officer Morrison drove appellant’s vehicle to the impoundment lot to
inventory the vehicle. While conducting the inventory of the vehicle, Officer
Morrison found a cell phone in the passenger compartment and eight kilograms of
cocaine in an open container in the trunk. He seized the items and included them in
his supplemental offense report. Officer Morrison testified that it is not part of the
police department’s policy to make a separate inventory list of the items seized. 
                                                  This evidence met the State’s burden of establishing standard procedures for
inventory searches. See Moberg v. State, 810 S.W.2d 190, 195 (Tex. Crim. App.
1991). We hold that the record sufficiently supports the trial court’s implied
conclusion that there were standardized inventory procedures and that Officer
Morrison followed those procedures. 
          3.       Inventory Search as Pretext     
          Appellant further asserts that the search and seizure violated the Fourth
Amendment because “the actual inventory was a pretext for an evidentiary search
without probable cause.” 
          Appellant asserts that an inventory is reasonable and lawful under the Fourth
Amendment only if conducted for the purposes of an inventory and that it may not be
used by police officers as a ruse for general rummaging in order to discover
incriminating evidence. See Florida v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635
(1990). Appellant argues that the police officers in this case were not interested in
safeguarding valuables because Officer Morrison’s inventory of the vehicle omitted
“items of value,” clothing, and a description of scratches and dents, which were
subsequently included in an inventory later done by a non-officer city employee. 
Appellant thus concludes that the inventory of his vehicle was a pretext for an
investigative search.
          In support of his argument, appellant presented evidence that Rene Arredondo,
a City of Pasadena employee assigned to the impoundment lot, also inventoried the
vehicle, noting “items of value,” clothing, and a description of scratches and dents that
had been omitted from Officer Morrison’s inventory. However, Arredondo also
testified that his primary responsibility was to conduct a visual inspection of the
interior of the vehicle, without entering the vehicle, and primarily to document the
outside condition to the vehicle, i.e., any body damage. According to Arredondo, if
a vehicle is driven to the lot by an officer, the officer performs the inventory of the
contents of the vehicle on the lot; afterwards, the lot attendant fills out a form listing
items of value apparent from the visual inventory and body damage to the vehicle. 
          Additionally, the police officers’ testimony at trial specifically negated
appellant’s contention that the inventory search was a pretext to cover up the officers’
actual intent to search for drugs. Officer Brosas testified that it was the Pasadena
Police Department’s policy to arrest a motorist who had committed a traffic violation
and did not have identification and insurance. Officer Morrison testified that
appellant’s vehicle was impounded pursuant to Pasadena Police Department policy,
which provided that, when a motorist was taken into custody, the vehicle that he was
operating would be impounded and inventoried to protect the department from
liability. Sergeant Kelly also testified that the inventory of appellant’s vehicle was not
conducted so that police officers could search for the container placed in the trunk,
but, rather, because “[Pasadena Police Department’s] rules say we must do [an
inventory]. It protects us down the road.” 
          The trial court is the sole trier of fact at a hearing on a motion to suppress, and,
as such, it may choose to believe or to disbelieve any or all of a witness’s testimony. 
Taylor v. State, 604 S.W.2d 175, 177-78 (Tex. Crim. App. 1980). The record supports
an implied finding by the trial court that the inventory was not a ruse. Considering the
evidence, we hold that the inventory was not a pretext for an investigative motive.
          4.       Validity of Search
          Appellant argues that the combination of the pretextual inventory and the
officers’ failure to follow procedures rendered the search invalid.
            Appellant asserts that, because inventory procedures were not followed, Officer
Morrison’s cursory inspection could have no purpose other than to search for
evidence. However, as discussed above, the record supports implied findings of fact
by the trial court that an inventory policy existed and was followed by Officer
Morrison and an implied conclusion that the inventory was not a pretext for an
evidentiary search. Accordingly, we hold that the trial court did not err in implicitly
concluding that the search was valid. 
D.      Conclusion
          Having concluded that the there was reasonable suspicion and probable cause 
to stop appellant, and that the search was conducted pursuant to a valid inventory, we
decline to address appellant’s contentions that the search was not a valid search
incident to arrest and that there was no probable cause to search the trunk. See Laney
v. State, 117 S.W.3d 854, 863 (Tex. Crim. App. 2003) (allowing appellate court to
uphold trial court’s ruling if ruling is reasonably supported by record and correct on
any theory of law applicable to case).  
          Accordingly, we hold that the trial court did not err in denying appellant’s
motion to suppress physical evidence.
            We overrule appellant’s sole point of error.  
             
Conclusion
          We affirm the judgment of the trial court. 
                                                                                                                                     
 
                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b).